PC:DDB
F.# 2010R.02320

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

LASHA GOLETIANI,

          Defendant.

- - - - - - - - - - - - - - - -X

# M-11-632

TO BE FILED UNDER SEAL

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT
(T. 31, U.S.C., §5324(a)(2)
and (d)(2))

EASTERN DISTRICT OF NEW YORK, SS:

        DANIEL P. SYMONDS, being duly sworn, deposes and says
that he is a Special Agent with United States Immigration and
Customs Enforcement ("ICE"), duly appointed according to law and
acting as such.

        Upon information and belief, in or about May 2011,
within the Eastern District of New York and elsewhere, the
defendant LASHA GOLETIANI, together with others, for the purpose
of evading the reporting requirements of Title 31, United States
Code, Section 5313(a) and Title 31, Code of Federal Regulations,
Section 1010.311, did knowingly and intentionally cause and
attempt to cause domestic financial institutions to file reports
required under Title 31, United States Code, Section 5313(a) that
contained material omissions and misstatements of fact, and did

so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

(Title 31, United States Code, Sections 5324(a)(2) and (d)(2))

The source of your deponent's information and the grounds for his belief are as follows:

1.   I have been a Special Agent with ICE for approximately two years.  In this capacity, I have participated in numerous investigations involving, among other crimes, financial transaction fraud, violations of the Bank Secrecy Act and money laundering.  Through my training, education and experience -- which has included debriefing numerous cooperating witnesses involved in violating federal financial reporting regulations, remitting money illegally, laundering the proceeds of criminal activities and committing other crimes; reviewing financial records that reflect structuring of deposits and withdrawals; and conducting surveillance on numerous occasions of individuals engaged in violating federal financial reporting regulations, as well as other federal laws -- I have become familiar with the manner in which money is deposited and withdrawn from banks, money service businesses and other financial institutions to avoid reporting requirements, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2

2.    I am assigned to an investigation of the defendant
LASHA GOLETIANI and others, who were involved in a scheme to
cause the filing of materially false Currency Transaction Reports
(FinCEN Form 104, referred to as "CTRs") through a check cashing
store located in Queens, New York called Belair Payroll Services,
Inc. ("Belair").

3.    The information set forth in this complaint is
based on my review of documentary evidence and records,
surveillance, interviews with various witnesses to and
participants in the criminal activity described herein, and
discussions with other law enforcement agents, as set forth in
more detail below. Because this complaint is submitted only to
establish probable cause to arrest, I have not included each and
every fact known to me concerning this investigation. I have set
forth only the facts that I believe are necessary to establish
probable cause. In addition, when I rely on statements made by
others, such statements are set forth in part and in substance
unless otherwise indicated.

<u>CURRENCY REPORTING REQUIREMENTS</u>

4.    Pursuant to Title 31, United States Code, Section
5313(a) and Title 31, Code of Federal Regulations, Section
1010.311, domestic financial institutions are required to file a
CTR with the United States Department of the Treasury for each
deposit, withdrawal, exchange of currency or other payment or
transfer, by, through or to such financial institutions that

3

involves a transaction in currency of more than $10,000. Banks and check cashing stores are financial institutions that are required to file CTRs under Title 31, Code of Federal Regulations, Section 1010.311. Thus, if a check cashing business conducts a transaction involving more than $10,000 in U.S. currency, it is obligated to file a CTR.

5.   CTRs are required to be filed to assist the United States in criminal, tax and regulatory investigations and proceedings, as stated in Title 31, Code of Federal Regulations, Section 1010.301. CTRs require disclosure of, among other things, the individual or organization on whose behalf the transaction is conducted (Part I, Section A of the CTR) and the identity of the individual who actually conducted the transaction (Part I, Section B of the CTR).

6.   According to records filed with the State of New York Department of State, Division of Corporations, Belair is a domestic financial institution incorporated in the State of New York that operates check cashing stores throughout New York, including one located at 159-17 Northern Boulevard, Flushing, New York 11358. Belair is licensed and registered in the State of New York as a money service business. As such, Belair is a "financial institution" as defined in Title 31, United States Code, Section 5312(a)(2)(k) and Title 31, Code of Federal Regulations, Section 1010.100(t), and is required to file CTRs.

PROBABLE CAUSE

7.    The investigation in this matter has revealed that
between March 2009 and May 2011, defendant LASHA GOLETIANI
engaged in a fraudulent scheme to cause Belair to file materially
false CTRs, for the purpose of evading the reporting requirements
of Title 31. As part of the scheme, the defendant and others (a)
caused Belair to file CTRs that omitted the material fact that
the defendant was the person actually conducting the transaction;
(b) caused Belair to file CTRs that falsely and fraudulently
identified individuals purportedly presented checks to be cashed
at Belair; and (c) falsely and fraudulently represented to Belair
that companies on whose behalf the checks were purportedly being
negotiated were legitimate companies when, in fact, they were
merely shell companies with no legitimate purpose or activities.

8.    On or about February 3, 2011, ICE Special Agents
interviewed an employee of a Belair who is a cooperating witness
("CW"). The CW stated that as a part of his job responsibilities
he signed and filed CTRs at Belair. The CW further stated that
he recognizes the defendant, whom he knows as "John", as a
regular customer of Belair. According to the CW, the defendant
has been cashing checks at Belair since March 2009 and cashes
multiple checks several times a week at Belair. In fact, for the
period of May 2011 alone, the CW filed 26 CTRs for the defendant
totaling in excess of $600,000.

5

Knowledge, Intent and Purpose

9. The defendant knew that Belair was required to file CTRs for cash transactions of $10,000 or more and that Belair filed CTRs relating to the defendant's transactions on a regular basis.

10. On or about April 26, 2011, the CW asked the defendant if he knew what a CTR was, and the defendant responded that he did. On the same date, the defendant told the CW that because he did not want CTRs to be filed in his name, he tried to keep the checks that he cashed under $10,000.

11. The defendant took numerous steps to evade the CTR filing requirement. On or about April 26, 2011, the defendant told the CW that he did not want his name listed on any CTR forms Belair filed. On or about May 9, 2011, the defendant instructed the CW to fill out and file the CTRs without his name and to file the CTRs in the names of certain companies and the purported owners of these companies. The CW complied with the defendant's request on both occasions. Both times, the defendant informed the CW that some of the persons identified in Part I, Section A of the CTR as the owners of the companies on whose behalf the transactions were conducted were no longer present in the United States.

6

12.   Between October 2010 and the present, ICE Special Agents and I have conducted numerous surveillance operations in the vicinity of Belair.  On multiple occasions, I observed the defendant, whose identity was confirmed through New York State Department of Motor Vehicle records and by the CW, entering Belair and conducting financial transactions inside the employee-only area of Belair.  On November 17, 2010, another agent involved in the investigation observed the defendant exit Belair holding a package concealed in his vest.  The defendant then entered his vehicle, lifted up his vest and removed a brick-like object that appeared to be United States currency wrapped in a translucent bag.

## Materially False Statements and Omissions

13.   According to the CW, 26 CTRs representing transactions conducted by the defendant were filed by Belair with the United States Department of Treasury in May 2011.  However, at the direction of the defendant, none of those CTRs named him as the person actually conducting the transaction, as required in Part I, Section B of the CTR.  Rather, the defendant instructed the CW to fill out Part I, Section A of the CTR with the name and address of a fictitious corporation and a fake corporate officer, and to complete Part I, Section B of the CTR by checking the box indicating, in effect, that the corporate officer was conducting the transaction.  Thus, pursuant to the defendant's instructions,

7

the CTRs falsely state that the transactions were conducted on behalf of and by certain corporations and those corporations' officials, when, in fact, the defendant actually conducted the transaction.

14. I reviewed 26 CTRs that were filed by Belair in May 2011 as the result of transactions conducted by the defendant (the "GOLETIANI CTRs"). All of those CTRs falsely list persons as participants in the financial transactions who, in fact, had nothing to do with the transactions. According to Department of Homeland Security ("DHS") records, the persons listed on the CTRs were often not even present in the United States when the financial transactions listed on the CTRs took place. Further, none of the CTRs list the defendant as either the person on whose behalf the transaction was conducted (Part I, Section A of the CTR) or the individual conducting the transaction (Part I, Section B of the CTR), even though the defendant was involved in each of the transactions.

Shell Companies and False CTRs

15. The GOLETIANI CTRs also falsely list persons participating in the financial transactions as owners of specific corporations. The investigation has revealed that these corporations were not engaged in any legitimate business function and were essentially shell companies.

8

16.  I personally visited a number of the corporate addresses detailed on the certificates of incorporation for the shell companies that were listed on the GOLETIANI CTRs and observed that all of the addresses appeared to be residential buildings out of which no businesses were being operated.  In addition, there did not appear to be any connections between these buildings and the persons in whose names the shell companies were established, as no mailboxes could be found bearing the names of the persons listed on the certificates of incorporation for the corresponding shell company.

17.  The defendant used various shell companies, incorporated in the State of New York.  These shell companies purported to be medical, billing and processing companies, and included names such as BHO Marketing, VDS Medical Supply, Inc., Sharp Processing Services, Inc., Georgia Business Services Inc. and GRP Computer Maintenance, Inc.  There is no evidence that any of these shell companies is a legitimate company that engages in its or any purported business.  In almost every instance, the individual listed in public records as the owner of the company is no longer present in the United States.  Further, DHS records with respect to all of the individuals purporting to be owners of the corporations indicate that the individuals had only temporary immigration status in the United States, often a J-1 "Nonimmigrant Exchange Visitor" visa.

9

18.  Disclosure of this affidavit and warrant could result in the flight of the defendant and other targets of the investigation, the destruction of evidence and tampering with witnesses.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant LASHA GOLETIANI, so that he may be dealt with according to law.

WHEREFORE your deponent further respectfully requests that this affidavit and the arrest warrant be sealed until further order of the Court.

_____
DANIEL P. SYMONDS
Special Agent
United States Immigration and
Customs Enforcement

Sworn to before me this
___ day of _____ , 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10